UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **CHRISTY NICOLE PAYTON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CASE NO.  4:14-CV-1404-SLB |
| | ) |
| **CAROLYN W. COLVIN, Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Christy Nicole Payton brings this action pursuant to 42 U.S.C. § 405(g),[1] seeking review of the Commissioner of Social Security's final decision denying her application for supplemental security income ["SSI"].  Upon review of the record, the relevant law, and the parties' briefs, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI on December 7, 2010, alleging disability beginning on December 1, 2009. (R. 11, 53.)[2]  Her application was denied initially on May 2, 2011.  (R. 62.)  Thereafter, she requested a hearing before an Administrative Law Judge

---

[1] The judicial review provisions for DIB claims, 42 U.S.C. § 405(g), apply to claims for SSI.  *See* 42 U.S.C. § 1383(c)(3).

[2] References to page numbers in the Commissioner's record are set forth as "[R.____]". Reference to a document number, ["Doc. ____"], refers to the number assigned to each document as it is filed in the court's record.

["ALJ"], which was held on September 24, 2012. (R. 26.) After the hearing, the ALJ found that plaintiff was able to perform her "past relevant work as a cashier at a grocery store, fast food worker and a breakfast manager at a fast food restaurant." (R. 21.)  In light of these findings, the ALJ determined that plaintiff was not disabled and denied plaintiff's request for SSI on October 26, 2012. (*Id.*)

Plaintiff then requested review of the ALJ's decision by the Appeals Council, (R. at 7), and on May 21, 2014, the Appeals Council denied plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner of Social Security, (R. 1). Following denial of review by the Appeals Council, plaintiff filed an appeal in this court. (Doc. 1.)

## II.  STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court's role is a narrow one:  "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]; rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and

supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cor. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. <u>DISCUSSION</u>

**A.  THE FIVE-STEP EVALUATION**

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for supplemental security income.  *See* 20 C.F.R. § 416.920(a)(1)-(2); *see also Bowen v. City of New York,* 476 U.S. 467, 470 (1986).  "The term 'disability' means – (A) [the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 416(i)(1). The specific steps in the evaluation process are as follows:

### 1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987). The regulations define "substantial gainful activity" as "work activity that is both substantial and gainful."[3] 20 C.F.R. § 416.972. If the claimant is working and that work is substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience. 20 C.F.R. § 416.920(b). "Under the first step, the claimant has the burden to show that she is not currently engaged

---

[3]The regulation provides:

(a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572; 20 C.F.R. § 416.972.

in substantial gainful activity." *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[4]

The ALJ found that plaintiff had not engaged in substantial gainful activity since December 7, 2010, the alleged onset date. (R. 13.)

### 2. Severe Impairments

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience." 20 C.F.R. § 416.920(c). "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected

---

[4]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. *Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority*." 11th Cir. R. 36-2 (emphasis added).

5

to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 416.921(a). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 416.923. A claimant has the burden to show that she has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff had the following severe impairments: fibromyalgia, degenerative changes of the right knee status post three arthroscopic surgeries, and a history of abdominal/pelvic pain. ( R.13.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the durational requirement and whether it is equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of her age, education, and work experience. 20 C.F.R. § 416.920(d). The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 17.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv), (f). At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work. 20 C.F.R. § 416.960(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it. 20 C.F.R. § 416.960(b)(1). If the claimant is capable of performing her past relevant work, the Commissioner will find she is not disabled. 20 C.F.R. § 416.920(e). The claimant bears the burden of establishing that the impairment prevents her from performing past work. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff had the RFC "to perform light work . . . except she cannot work around unprotected heights, she cannot climb ladders, ropes or scaffolds and can only occasionally push and pull foot or leg controls with her right lower extremity." (R.18.) The ALJ found that plaintiff's RFC does not restrict her from performing her past relevant

work as a cashier at a grocery store, a fast food worker, and a breakfast manager at a fast food restaurant. (R.21.)

## B.  MS. PAYTON'S CLAIMS

Plaintiff argues that the ALJ erred by (1) finding that plaintiff's testimony is not credible, (Doc. 11 at 19); (2) finding that plaintiff's non-severe impairments of major depressive disorder and dysthymic disorder do not cause more than minimal limitation, (*id.* at 24); (3) failing to apply proper legal standards and not relying on substantial evidence to find that plaintiff can perform past relevant work , (*id.* at 11); and (4) relying on vocational expert testimony after failing to fully state plaintiff's impairments and limitations in a hypothetical to the VE, (*id.* at 14).  Having reviewed the entire record before the ALJ and the parties' briefs, the court finds that the Commissioner's decision is due to be affirmed.

### 1. Credibility of Plaintiff's Testimony

Plaintiff argues that the ALJ improperly discredited plaintiff's testimony concerning the severity of her pain and contends that plaintiff's testimony "in addition to the medical evidence clearly establishes [her] disability." (Doc. 11 at 19, 23.) SSR 96-7p explains the two step process set out in 20 C.F.R. § 416.929: "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment— i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques— that could reasonable be expected to produce the individual's pain

or other symptoms." This determination does not consider the "intensity, persistence, or functionally limiting effects of the individual's symptoms." SSR 96-7p.

>If the ALJ finds that the plaintiff's case survives the first step, then
>
>>the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p.

Plaintiff argues that "[t]he pain standard does not require objective proof of the pain itself, (Doc. 11 at 20 (citing *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991)), and that her subjective testimony of the severity of her pain is sufficient to support a finding of disability, (Doc. 11 at 20). While the ALJ must consider a claimant's subjective testimony in determining the severity of her pain, the ALJ is also required to consider the objective medical evidence. *See* 20 C.F.R. § 416.929(a) ("In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence . . . ."). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court." *Dyer v. Barnhart*,

9

395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1562) (internal quotations omitted).

The ALJ found that "although the evidence establishes underlying medical conditions capable of producing some pain and other limitations, the substantial evidence does not support a conclusion that the objectively determined medical conditions are of such severity that they could reasonably be expected to give rise to disabling pain and other limitations as alleged by the claimant." (R.20.) In making this determination, the ALJ relied on medical evidence from the record:

> Dr. Anderson, the medical expert, testified the patient has a generalized pain syndrome with possible myalgia and possible fibromyalgia. Dr. Anderson testified the claimant has spinal pain associated with her generalized pain syndrome but an MRI of her thoracic spine and lumbar spine were normal. Dr. Anderson noted that the claimant had chronic knee pain but had good results with her arthroscopy surgery. . . . Dr. Anderson opined that the claimant should be restricted to work at the light exertional level.

(R. 19; *see also* R. 39-40.) The ALJ also noted that "[t]he record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." (R. 20.) *See Osborn v. Barnhart*, 194 F. App'x 654, 663 (11th Cir. 2006) (finding that the ALJ's decision to deny disability based on migraine headaches was supported by the lack of medical records supporting the level of severity to which the plaintiff testified).

The ALJ also relied on inconsistent testimony regarding plaintiff's abilities. Plaintiff testified at the hearing that she did not leave the house, sometimes for a week at a time, (R.

38-39), but in a Function Report, plaintiff stated that she attended church weekly, drove her children to and from school, and her mother reported that plaintiff went outside "daily," (R. 143, 146-47, 154). In a consultative examination, plaintiff again reported attending church on a weekly basis and stated that she was a Girl Scout leader. (R. 346.)

The court finds that the ALJ based his decision to discredit plaintiff's pain testimony on substantial evidence and sufficiently articulated his rationale for doing so.

**2. Major Depressive Disorder and Dysthymic Disorder**

Plaintiff next contends that the ALJ erred in finding that plaintiff's major depressive disorder and dysthymic disorder were non-severe impairments. (Doc. 11 at 24.) Although plaintiff does not cite any evidence from the record undermining the ALJ's finding in her Memorandum in Support of Disability, (Doc. 11), she argues in her Reply that the ALJ's finding is not supported by substantial evidence because it disregards December 2010 and February 2011 medical records from C.E.D. Mental Health Center and two Quality of Life records from September 2012, (Doc. 13 at 5).

The December 2010 record from C.E.D. Mental Health Center states that plaintiff presented with complaints of "depression on and off for years," that her depression has been worse for the past two months, and that she was "tearful" and had "vague suicidal thoughts." (R. 310.) The February 2011 record contains notes of the examiner: "flat-affect, withdrawn, poor appetite, . . . depression . . . , tearfulness often, nervous in crowds . . . , some good days/"happy" some days, and tearful at points in interview." (R. 313.) That record also

contains diagnoses for major depressive disorder, noted to be "recurrent" and "moderate," and social phobia. (R. 317.) Regarding the C.E.D. Mental Health Center records, the ALJ stated that "[i]n February 2011, the claimant was diagnosed with major depressive disorder and social phobia at the C.E.D. Mental Health Center in Gadsden, Alabama. There is no record of ongoing treatment at C.E.D. after the initial diagnosis." (R. 15.)

The ALJ then discussed additional evidence regarding plaintiff's depression, noting that during a consultative examination, Dr. June Nichols diagnosed plaintiff with dysthymic disorder and opined that plaintiff's "ability to relate interpersonally and withstand the pressures of everyday work [was] mildly compromised," that plaintiff did not have "deficits which would interfere with her ability to remember, understand and carry out work related instructions," and that she could "handle her own funds and live independently." (R. 15, 347.) During the exam, plaintiff reported experiencing depression since her teenage years. (344.) The ALJ also considered a report by Dr. Robert Estock, a state agency psychological consultant, in which Dr. Estock opined that plaintiff suffered from major depressive disorder and dysthymic disorder but had "only mild restriction of activities of daily living; no difficulties in maintaining social functioning; no difficulties in maintaining concentration[,] persistence and pace; and no episodes of decompensation" of an extended duration. (R. 15; *see* R. 348, 351-53.)

While the ALJ did not explicitly address the December 2010 record, which noted that plaintiff had "depression on and off for years," the ALJ acknowledged this fact by noting

that plaintiff had experienced depression since her teenage years and that this impairment had not inhibited plaintiff's ability " to work after the alleged onset of her depression." (R. 15.) Additionally, the ALJ adequately considered the February 2011 record, noting that plaintiff was diagnosed with depression and social phobia during this time. (R. 15.)

The two Quality of Life records from September 2012, to which plaintiff points, each contain an "assessment," under which it was noted that plaintiff had chronic depression. (R. 437, 446.) One record also contains an additional note that plaintiff reported "functioning as somewhat difficult." (R. 443.) The record also states that the "patient presents with difficulty falling asleep, difficulty staying asleep and restlessness but denies thoughts of death or suicide. The depression is aggravated by conflict or stress, lack of sleep and social interactions." (*Id.*) While plaintiff is correct that the ALJ did not explicitly review these Quality of Life records, these records are not inconsistent with the ALJ's finding. The records show that plaintiff had the impairment of depression, and one record notes plaintiff's subjective complaints regarding her depression. Those records, which are consistent with the ALJ's finding that plaintiff had major depressive disorder and dysthymic disorder, do not undermine the ALJ's findings regarding the severity of plaintiff's depression, and thus, the court finds that plaintiff has identified no reversible error.

### 3. Past Relevant Work

At step four, the ALJ determined that plaintiff could perform her past relevant work, including work as a cashier at a grocery store, a fast food worker, and a breakfast manager

at a fast food restaurant. (R. 21.) Plaintiff contends that the ALJ erred in reaching this finding because "[t]he ALJ omitted any finding of fact as to the claimant's residual functional capacity, a finding of fact as to the physical and mental demands of the past job/occupation, and a finding of fact that the claimant's [RFC] would permit a return to the past job or occupation."[5] (Doc. 11 at 11.)

The Regulations provide that the ALJ will use the RFC assessment at the fourth step of the sequential evaluation process to determine if a claimant can perform her past relevant work. 20 C.F.R. § 416.920(e). First, the ALJ must compare the RFC assessment with the "physical and mental demands of [the claimant's] past relevant work, and in doing so, the ALJ may rely on vocational expert testimony. 20 C.F.R. § 416.960(b).

> A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. § 416.960(b)(2).

---

[5] In her Reply, plaintiff admits that the ALJ "did make a finding of fact as to the claimant's [RFC]" but maintains that the ALJ failed to make a finding of fact regarding (1) the physical and mental demands of plaintiff's past work and (2) whether plaintiff's RFC would permit her to return to her past work. (Doc. 13 at 2.)

At the hearing, the ALJ asked the VE the following hypothetical:

> If I were to find the [c]laimant capable of performing work at the light level of exertion, but I find that she would be precluded from work around unprotected heights, she would be precluded from climbing ladders, ropes, or scaffolds, she would be limited to no more than occasional pushing or pulling of foot or leg controls with the right lower extremity, would she be capable of performing any of the past work that you have identified?

(R. 42.) The VE responded that a claimant with this RFC could perform all of plaintiff's past relevant work. (*Id.*)

After the hearing, the ALJ found that plaintiff had the RFC to perform "light work . . . except she cannot work around unprotected heights, she cannot climb ladders, ropes or scaffolds and can only occasionally push and pull foot or leg controls with her right lower extremity," (R.18), and then determined that plaintiff could perform her past relevant work, (R. 21). The ALJ relied on the VE's testimony regarding plaintiff's past work, including testimony that the Dictionary of Occupational Titles ("DOT") defines all of plaintiff's past work as work performed at the "light level of physical exertion." (*Id.*) *See Hernandez v. Comm'r of Soc. Sec.*, 433 F. App'x 821, 823 (11th Cir. 2011) ("The ALJ was permitted to rely on the DOT classifications to determine whether Hernandez's past relevant work was light in exertion as it is generally performed in the national economy."). The ALJ then stated that, "[i]n comparing the claimant's [RFC] with the physical and mental demands of this work, I find that the claimant is able to perform it as actually and generally performed." (R. 21.)

The court finds that the ALJ conducted an RFC assessment, properly evaluated the physical and mental demands of plaintiff's past relevant work based on the VE's testimony regarding the DOT classifications for plaintiff's past work, and then relied on substantial evidence in finding that plaintiff's RFC permits her to return to her past work.

### 4. Vocational Expert Testimony

Plaintiff contends that "[t]he testimony of the VE was not substantial evidence because the ALJ in his hypothetical did not consider [c]laimant's depression, irritable bowel syndrome, migraines, and fibromyalgia." (Doc. 11 at 14.)

"In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel* 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)). However, the ALJ is not required to include impairments in the hypothetical that the ALJ finds the claimant does not have. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (An "ALJ [is] not required to include findings in the hypothetical that the ALJ ha[s] properly rejected as unsupported."); *Loveless v. Massanari*, 136 F. Supp. 2d 1245, 1251 (M.D. Ala. 2001); *McKay v. Apfel*, No. Civ. A. 97-C-1548-N, 1999 WL 1335578, at *7 (M.D. Ala. Dec. 9, 1999) ("[T]he [ALJ's] hypothetical need only include[] the impairments which the ALJ accepts as true.") (citing *Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir. 1994); *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990); *Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988)).

The ALJ posed a hypothetical question to the VE that included every limitation the ALJ identified in the RFC assessment. (*See* R. 42.) The ALJ was not required to include limitations in the hypothetical resulting from impairments whose severity the ALJ properly found to be unsupported by substantial evidence in the record. *See Loveless v. Massanari*, 136 F. Supp. 2d 1245, 1251 (M.D. Ala. 2001) ("Having reviewed the record, the court finds that the ALJ's hypothetical questions posed to the VE were proper because they included only the impairments that the ALJ found to have been severe. Because the court finds that the ALJ's determination of non-severity was supported by substantial evidence, the court concludes that the ALJ's hypothetical questions to the VE were sufficiently comprehensive."). The ALJ determined the evidence of record did not support a finding that plaintiff's irritable bowel syndrome ("IBS") and migraines were severe, stating that little evidence in the record supported the existence of those impairments[6] and that those impairments did not meet the durational requirements. (R. 13-14.) Additionally, regarding plaintiff's depression, the ALJ relied on substantial evidence in finding that this impairment was non-severe, as discussed above.

---

[6] The ALJ incorrectly stated that "there is no objective medical evidence in the record indicating that the claimant has sought or received treatment for IBS and there is no diagnosis of IBS in the record," (R. 14), as a Quality of Life record shows that plaintiff was treated for "[i]rritable colon" on September 4, 2012 with medication. (R. 446.) When plaintiff returned to Quality of Life on September 18, 2012, plaintiff was negative for IBS symptoms. (R. 435.) Plaintiff does not challenge the ALJ's failure to reference this evidence regarding plaintiff's IBS impairment. Even considering this evidence, the court finds that the ALJ's opinion is supported by substantial evidence.

Furthermore, the ALJ found plaintiff's fibromyalgia to be a severe impairment but determined that the objective medical evidence of record and plaintiff's subjective self-assessments did "not support the extreme symptoms and limitations alleged by [plaintiff]." (R. 19.) Dr. David McLain diagnosed plaintiff with fibromyalgia and noted that she had pain in her hands, wrists, knees, and ankles and swelling in her fingers. (R. 19, 179, 181.) The ALJ discussed plaintiff's Functional Disability Report, stating that plaintiff "only had some difficulty getting out of a car, bus, train or airplane," and considered the following evidence:

> Dr. McLain conducted X-rays of the claimant's right and left hands revealing no periarticular osteoporosis or erosions in either hand. An MRI of the claimant's lumbar and thoracic spine were found to be normal. In a health assessment questionnaire from February 2012, the claimant indicated she only had some difficulty getting out of bed, dressing herself, tying her shoes and doing buttons. The claimant also stated she only had some difficulty walking outdoors on flat ground or getting in and out of a car. In Quality of life records from June 2011, it was noted the claimant had normal range of motion for all four extremities for her age. In February 2012, the claimant complained of joint pain but was noted to have stability in all extremities with no pain on inspection.

(R. 19 (citations omitted).) Having relied on substantial evidence to determine that plaintiff's fibromyalgia was not as limiting as alleged, the ALJ stated that he "fully accounted for [plaintiff's] fibromyalgia by limiting her to light exertional level work." (*Id.*) The court finds that the ALJ properly accounted for plaintiff's fibromyalgia in his hypothetical to the VE. Therefore, the ALJ's hypothetical question to the VE accurately reflected plaintiff's RFC and the limitations the ALJ found to be properly supported by substantial evidence. The court finds no error.

## IV. **CONCLUSION**

For the reasons set forth above, the decision of the Commissioner is due to be affirmed. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 2nd day of July, 2015.

*Sharon Lovelace Blackburn*
———————————————
SHARON LOVELACE BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE